UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIAN S. KING,                              )  | |
|                                             )  | |
|         Plaintiff,                          )  | |
|                                             )  | |
|     v.                                      )  | CASE NO. 1:06-cv-0381-DFH-TAB |
|                                             )  | |
| JO ANNE B. BARNHART,                        )  | |
| Commissioner of the Social                  )  | |
| Security Administration,                    )  | |
|                                             )  | |
|         Defendant.                          )  | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Brian S. King seeks judicial review of a final decision by the Commissioner of Social Security denying his application for disability insurance benefits. Acting for the Commissioner, an Administrative Law Judge ("ALJ") determined that Mr. King was not disabled under the Social Security Act because he retained the residual functional capacity to perform a significant number of unskilled light jobs. As explained below, the ALJ erred by not finding that Mr. King met the requirements of Listing 12.05C for mental retardation, which requires a finding of disability when those requirements are met. The evidence on the question and the ALJ's findings on the key issues are so clear-cut that this is one of those unusual cases in which there is no need for another hearing. The ALJ's decision is reversed for an award of benefits.

The implementing regulations for the Social Security Act provide the familiar five-step process to evaluate disability claims. The steps are:

(1) Has the claimant engaged in substantial gainful activity? If so, he was not disabled.

(2) If not, did the claimant have an impairment or combination of impairments that are severe? If not, he was not disabled.

(3) If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If so, the claimant was disabled.

(4) If not, could the claimant do his past relevant work? If so, he was not disabled.

(5) If not, could the claimant perform other work given his residual functional capacity, age, education, and experience? If so, then he was not disabled. If not, he was disabled.

See generally 20 C.F.R. § 404.1520. The listings in the third step identify impairments that are ordinarily so disabling that further individualized consideration of a person's abilities is not necessary.

Applying the five-step process to Mr. King, the ALJ found that Mr. King satisfied step one because he had not engaged in substantial gainful activity since his alleged onset date of disability in 1999. At step two, the ALJ found that Mr. King had severe physical impairments of neck pain, left-carpal tunnel syndrome, bilateral moderate sensorineural hearing loss for low frequencies, progressing to moderately severe sensorineural hearing loss for higher frequencies, and subjective complaints of headaches. At step two, the ALJ did not identify any mental impairments as severe.

At step three, the ALJ found that Mr. King failed to demonstrate that any of his severe impairments met or equaled any of the listed impairments that call for a finding of disability without further inquiry. At step four, the ALJ found that Mr. King's physical impairments would prevent him from performing any of his past relevant work, which included work as a dock shipping clerk, stores laborer, municipal worker, automobile detailer, industrial cleaner, and crate repair man. The ALJ then considered Mr. King's residual functional capacity at step five and found that he retained the residual functional capacity to perform a significant range of light work with some restrictions. R. 25-26. The only mental restrictions the ALJ found were that Mr. King would be limited to performing simple repetitive tasks that would not require complex thought or academic demands. The ALJ found that Mr. King therefore retained the ability to work and was not disabled under the Social Security Act.

Mr. King correctly points out that the ALJ erred by failing to find at step two that he had any mental impairment that was severe enough to impose limits on his ability to work. On this record, that error would be sufficient for at least a remand. But Mr. King's central argument is that he met all the requirements of Listing 12.05C, which addresses the *combination* of limited intelligence with severe physical impairments. If he met the requirements of the Listing, then he was entitled to benefits without further inquiry. The entire Listing 12.05 provides:

> Mental Retardation: Mental Retardation refers to significantly subaverage general intellectual function with deficits in adaptive functioning initially

      manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

      The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A.    Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or

B.    A valid verbal, performance, or full scale IQ of 59 or less; or

C.    A valid, verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or

D.    A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

    1.    Marked restriction of activities of daily living; or
    2.    Marked difficulties in maintaining social functioning; or
    3.    Marked difficulties in maintaining concentration, persistence, or pace; or
    4.    Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.05.

      There is no need to detail the history of Mr. King's physical impairments and his treatments for them, although those were the principal focus of the hearing before the ALJ. For purposes of deciding whether Listing 12.05C applies, the question as to his physical impairments is whether he had physical impairments that impose significant work-related limitations of function. The ALJ found that Mr. King's several impairments combined to limit him to lifting twenty pounds only occasionally and only ten pounds frequently, and that he should avoid

climbing or balancing, reaching over head, and should avoid work that involved significant exposure to noise, vibration, humidity, or work hazards such as dangerous moving machinery or unprotected heights.  R. 25.

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  The evidence and the ALJ's findings show beyond reasonable dispute that the specific severity requirements of 12.05C were satisfied here.  The ALJ found that Mr. King had physical impairments that imposed significant work-related limitations of function that were independent of his mental retardation, as shown by the limitations the ALJ found at step five for evaluating Mr. King's residual functional capacity.  See R. 25.

Mr. King also satisfied the severity requirements of Listing 12.05C based on standardized IQ tests.  A consultative psychological evaluation by Dr. Alfred R. Barrow, Ph.D., HSPP, showed that King had a verbal IQ of 64, a performance IQ of 81, and a full-scale IQ of 69.  R. 271.  Dr. Barrow, who performed the evaluation at the request of the Commissioner's Disability Determination Bureau, found that these scores were accurate.  R. 271.  The ALJ did not question that finding.  R. 20.

Because the ALJ's findings show that Mr. King satisfied the specific severity requirements set forth in subsection C of Listing 12.05, the only issue is whether

he satisfied the more general requirements of the initial paragraph: "showing significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period;" *i.e.*, the evidence demonstrated or supported onset of the impairment before age 22.

In terms of deficits in adaptive functioning, Dr. Barrow found that Mr. King "would be incapable of managing his funds independently and as a result, be in need of supervision in this area." R. 273. Dr. Barrow's report is in the record at pages 266-75. Dr. Barrow summarized his findings as follows:

> Although Mr. King presents with a full-scale IQ which is consistent with the mildly mentally handicapped range of intelligence, his adaptive level of functioning given that he has a driver's license and has helped to run a bait store in the house where he is living along with his significantly elevated performance IQ, it would appear that his level of intellectual functioning is more consistent with borderline intellectual functioning. This is also noted in areas involving perceptual organizational ability. At the same time, he will have significant academic difficulties with his report of this being consistent with the results of the WAIS-III. [IQ tests]. His mental status would also suggest considerable deficits in computational ability, comprehension, capacity for abstraction and fund of general information.

R. 272-73. On the performance IQ test, where Mr. King's score was significantly higher than on the other two IQ tests, Dr. Barrow noted that Mr. King scored "extremely high" on the picture completion sub-tests, which "tended to skew his performance IQ, with the other performance sub-tests being roughly commensurate with the verbal sub-tests," where his scores put him in the lowest one percentile of the population. See R. 271-72 (scores and comments), 274 (showing much higher picture completion test scores).

On the issue of onset of the impairment before age 22, the record indicates that Mr. King repeated both kindergarten and first grade.  He was in special education classes from fifth grade through twelfth grade.  There is no indication of any recent deterioration in his mental abilities or adult injuries that would cause these deficits.  A person's IQ is ordinarily presumed to remain stable over time in the absence of any evidence of a change in his or her intellectual functioning.  *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (finding that claimant met Listing 12.05C and ordering award of benefits), quoting *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001).

Accordingly, the ALJ's findings and the evidence show clearly that Mr. King satisfies all of the criteria of Listing 12.05C.  That should be the end of the case.  To defeat an award of benefits, however, the Commissioner argues that Mr. King did not satisfy the requirements of the initial paragraph, noting that no mental health professional applied the label "mental retardation" to Mr. King's diagnosis and that Mr. King had been able to adapt well enough to work a number of jobs in the past.  It is true that Mr. King had managed to hold a number of different jobs, almost always for brief periods, before his physical impairments became severe.  But in March 2004, Dr. Barrow found that Mr. King had a "Global Assessment of Functioning" or GAF score of 59.  R. 272.  The DSM-IV explains that such a GAF score describes "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social,

occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 34.

The Commissioner's argument is based on a misreading of Listing 12.05 and the role of the severity standards of sub-part C. The initial paragraph of the Listing does not require a diagnosis of "mental retardation." See *Maresh*, 438 F.3d at 899 ("this court disagrees with the Commissioner that the Listing's introductory paragraph requires a formal diagnosis of mental retardation. The plain language of the listing does not so state, and the Commissioner cites no supporting authority."); see also *Mendez v. Barnhart*, 439 F.3d 360, 361 (7th Cir. 2006) (citing *Maresh* for this point). The introductory paragraph does not require any particular IQ score. By its terms, it requires only "significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period. . . ." On this record, those general criteria were clearly satisfied. Where those general criteria are satisfied, the analysis turns to the sub-parts to determine the severity of the condition. As shown above, the ALJ's own findings and undisputed evidence show that the severity requirements of sub-part C were satisfied.

Both the ALJ and Dr. Barrow focused on evidence that, in the past, Mr. King had managed to adapt to some degree. He had managed to work a number of different jobs as a younger adult, with a great deal of help from friends and family. In short, he was keeping his head above water, at least before the deterioration in

his physical condition.  See *Mendez v. Barnhart*, 439 F.3d at 362 (noting that IQ of 70 "is at the borderline between retardation and normal, if low, mental ability").  But when Mr. King also had to cope with significant physical impairments, it became much more difficult for him to work.  Listing 12.05C sets standards that are designed to address just such a combination of mental limitations and physical impairments.  Its standards are designed to identify cases in which more detailed, individualized consideration of a claimant's situation is not justified.

The Commissioner cites *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001), to argue that a claimant must meet a formal diagnosis of mental retardation. *Foster* did not say that.  It said that a claimant must meet the criteria of both the introductory paragraph and one of the sub-parts, but the decision did not require a formal diagnosis of mental retardation.  *Foster* also differs from this case in two key respects.  First, in *Foster* there was some doubt as to whether the claimant's IQ test was valid.  *Id.* at 352.  There is no doubt here about the validity of Mr. King's scores.  Second, the claimant in *Foster* did not meet or equal the requirements of Listing 12.05C because she failed to make a threshold showing of adaptive deficits prior to the age of 22, and not because she had not been formally diagnosed with mental retardation.  *Id* at 354.

The Commissioner also relies heavily on the DSM-IV definition of mental retardation.  However, the Social Security Administration considered and rejected the use of the DSM-IV definition of mental retardation for Listing 12.05.  Instead,

the SSA relied on the more flexible standard found in the current language of Listing 12.05, which incorporated the essential elements of the four most widely used definitions of mental retardation. 67 Fed. Reg. 20,022 (April 24, 2002).

To meet the criteria of the initial paragraph of Listing 12.05 (as opposed to the DSM-IV definition of mental retardation), Mr. King was required to prove only that he had subaverage intellectual functioning and the onset of deficits in adaptive functioning which manifested themselves before the age of 22. The Commissioner's 2002 explanation of the various definitions noted that all required "significant deficits in intellectual functioning, as evidenced by IQ scores of approximately 70 or below." *Id.* Mr. King met that general standard. The regulations provide that in cases like this one, where more than one IQ score has been derived from the test, the lowest of the scores should be used to apply Listing 12.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c). Mr. King's valid verbal IQ of 64 and valid full scale IQ of 69 establish that he had significantly subaverage intellectual functioning. See *Mendez*, 439 F.3d at 361 (stating that "[r]oughly 95 percent of the population has an IQ between 70 and 130" and that IQ of 70 is generally considered just at the borderline of mental retardation, so that at that level, an additional impairment is required to establish disability).

Both Dr. Barrow and the ALJ focused on the facts that Mr. King had obtained a driver's license at age 17 and that he had helped a friend run a small bait shop back in 2004 when Dr. Barrow interviewed him. Neither fact

undermines the applicability of Listing 12.05C.  When Mr. King obtained his driver's license at age 17, he had to have the driver's test read to him because of his problems with reading, writing, and spelling, a fact that the ALJ mentioned but did not discuss.  See R. 20.  At relevant times for this case, the 45 year old Mr. King relied on friends for transportation.  The bait shop situation also provides little support for the ALJ's decision.  At the time, Mr. King was living in his friend's home.  The friend sold bait from his home.  In return for staying at the property, Mr. King helped out at the "store" on a part-time basis by keeping the bait stocked.  There is no indication that Mr. King could actually run the little shop. In fact, his difficulties with calculations and making change would have made it impossible for him actually to run the bait shop.  See R. 269-70 (report on calculating ability).  Helping out his friend at the bait shop was not remotely comparable to competitive employment.

In summary, the ALJ's findings and the evidence show beyond reasonable dispute that Mr. King met all the criteria of Listing 12.05C.  When he had been in better physical shape at a younger age, he had managed to hold a number of different jobs, almost always for brief periods, despite his intellectual limitations. But the combination of physical impairments with his intellectual limitations is sufficient to satisfy the severity criteria of Listing 12.05C.

The court is fully aware of the deferential standard of review that applies on judicial review of decisions by the Commissioner through an ALJ.  "The standard

of review in disability cases limits . . . the district court to determining whether the final decision of the [Commissioner] is both supported by substantial evidence and based on the proper legal criteria." *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), quoting *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the court must "'conduct a critical review of the evidence,' considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision . . . ." *Briscoe*, 425 F.3d at 351, quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); see also *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The court must not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater*, 78 F.3d 305,

309 (7th Cir. 1996). This principle stated in *Sarchet* requires that the ALJ's decision adequately discuss the relevant issues: "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe*, 425 F.3d at 351, citing *Herron v. Shalala*,19 F.3d 329, 333-34 (7th Cir. 1994). Although the ALJ need not provide a complete written evaluation of every piece of testimony and evidence, *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005), a remand may be required if the ALJ has failed to "build an accurate and logical bridge from the evidence to his conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002), quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

This is an unusual case in which the ALJ's own findings show that the requirements of Listing 12.05C were satisfied. No doubt the issue under Listing 12.05C could have and should have been presented more sharply, and the ALJ dealt ably with a complex record of many physical impairments and a history of depression and anxiety, as well. The Commissioner has not argued there was any waiver or forfeiture of the Listing 12.05C issue, however, and the argument on judicial review shows that the ALJ's failure to find that the listing was satisfied was a legal error that calls for the denial to be reversed.

In most cases where the ALJ has erred in some way, the remedy is a remand to the Commissioner for a fresh hearing. In a few cases, however, where the relevant factual issues have been resolved and the record requires a finding

of disability, a court may order an award of benefits. *Maresh v. Barnhart*, 438 F.3d at 901 (reversing and ordering award of benefits where evidence showed that Listing 12.05C was met); *Hickman v. Apfel*, 187 F.3d 683, 690 (7th Cir. 1999) (reversing and ordering award of benefits where evidence showed that listing was met); *Micus v. Bowen*, 979 F.2d 602, 609 (7th Cir. 1992) (ordering award of benefits); see generally *Briscoe v. Barnhart*, 425 F.3d 345, 356-57 (7th Cir. 2005) (explaining when remand is required and when court may order award of benefits, and ordering remand for new hearing where undeveloped record left the main factual issue undecided). Final judgment shall be entered ordering the Commissioner to award benefits to Mr. King.

So ordered.

Date: February 26, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov